UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MISTY LEE TAYLOR, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| v. | ) | Civil No. 09-281-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
|     *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she is disabled by post-traumatic stress disorder ("PTSD"), anxiety, depression, and borderline personality disorder, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of PTSD, an anxiety-related disorder, an affective disorder, and sleep apnea, Finding 3, Record at 13; that she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on April 1, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

limitations: a limitation to occupations that require no more than simple, routine, repetitive tasks, not performed in a fast-paced environment, involving only simple work-related decisions and, in general, relatively few workplace changes, a limitation to only occasional interaction with co-workers and supervisors, and a need to avoid interaction with the general public, Finding 5, *id*. at 16; that, considering her age (24 years old, defined as a younger individual, on the alleged disability onset date of September 30, 2005), education (limited), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 19-20; and that she, therefore, was not disabled from September 30, 2005, through the date of decision, Finding 11, *id*. at 21.[2] The Decision Review Board declined to disturb the decision, *see id*. at 1-5, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g),

---

[2] The plaintiff was insured for purposes of SSD benefits through September 30, 2011. *See* Finding 1, Record at 12. Entitlement to SSI benefits does not depend on insured status. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999).

416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks reversal and remand on two alternative bases: that the administrative law judge (i) made an RFC determination unsupported by substantial evidence and (ii) erred in rejecting the evaluation of William M. Barter, Ph.D. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 10) at 2-7. I find no error in the administrative law judge's handling of the Barter opinion. However, I agree that his RFC determination is unsupported by substantial evidence. On that basis, I recommend that the court reverse and remand the decision.

### A. RFC Determination

The commissioner prescribes a psychiatric review technique that adjudicators must follow in assessing whether, at Step 2, a claimant has medically-determinable mental impairment(s); if so, whether, at Steps 2 and 3, such impairments are severe and meet or equal a so-called Listing (a determination arrived at with the aid of a so-called Psychiatric Review Technique Form ("PRTF"); and, if one proceeds to Steps 4 and 5, the degree to which such impairments impact RFC (a so-called mental RFC assessment). *See* 20 C.F.R. §§ 404.1520a, 416.920a. At the PRTF stage, the severity of the impairment is assessed on the basis of rating of the degree of limitation in four broad functional areas: (i) activities of daily living, (ii) social functioning, (iii) concentration, persistence, or pace, and (iv) episodes of decompensation. *See id.* If a mental impairment is judged to be severe but not to meet or equal a Listing, assessment

of a claimant's mental RFC is required; if it is judged non-severe, no mental RFC assessment need be made. *See id*.

Unless the sequelae of a claimant's impairments are obvious to a layperson as a matter of common sense, an administrative law judge is not qualified to determine RFC on the basis of the raw medical evidence but instead must look to a medical expert to do so. *See, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," she "is not qualified to assess residual functional capacity based on a bare medical record"); *Rohrberg v. Apfel,* 26 F. Supp.2d 303, 311 (D. Mass. 1998) ("[T]he ALJ, although empowered to make credibility determinations and to resolve conflicting evidence, is not at liberty simply to ignore uncontroverted medical reports. An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (citations and internal punctuation omitted).

The plaintiff is correct that the administrative law judge's detailed assessment of her mental RFC cannot be traced to, and is unsupported by, any medical expert opinion of record.

The record contains two mental RFC assessments: those of treating social worker Bonnie Spencer, LCSW, dated December 12, 2008, and Dr. Barter, a consultant who tested and examined the plaintiff at her attorney's request, dated February 10, 2009. *See* Record at 632-33, 719-20; *see also id*. at 713. Scott W. Hoch, Ph.D., a Disability Determination Services ("DDS") nonexamining consultant, assessed the plaintiff's impairments as non-severe and hence completed no mental RFC assessment. *See id*. at 445-58. James M. Claiborn, Ph.D., an expert present at the plaintiff's hearing, testified that she had severe mental impairments that imposed

4

mild restrictions on her activities of daily living, moderate restrictions on her social functioning, and moderate restrictions on her concentration, persistence, or pace, with no evidence of episodes of decompensation. *See id*. at 66-67. However, Dr. Claiborn offered no testimony concerning her mental RFC. *See id*. at 65-68.

The administrative law judge found that the plaintiff had severe mental impairments, rejecting the PTRF opinion of Dr. Hoch, who had not had the benefit of review of later evidence of mental health treatment, and accepting that of Dr. Claiborn. *See id*. at 13, 15, 18. He also explicitly gave the mental RFC assessments of Dr. Barter and social worker Spencer little weight. *See id*. at 18-19. Thus, in essence, he crafted his finding of the plaintiff's mental RFC from the raw treatment and assessment evidence of record. At oral argument, counsel for the commissioner contended that he permissibly did so, making a common-sense judgment as a layperson that her impairments imposed few functional limitations. I cannot agree. The record in this case contains experts' conflicting opinions as to the extent and nature of the functional capacity restrictions flowing from the plaintiff's mental impairments. The administrative law judge was not qualified, as a layperson, to make that assessment, which should have been entrusted to an expert or experts. His mental RFC finding accordingly was unsupported by substantial evidence.[3]

In the absence of a supportable RFC finding, the commissioner's Step 5 finding of ability to engage in other work cannot stand, necessitating reversal and remand for further proceedings consistent herewith. *See, e.g., Rosado*, 807 F.2d at 294 (at Step 5, the record must contain positive evidence in support of the commissioner's findings regarding a claimant's RFC);

---

[3] As the plaintiff notes, it is not self-evident that the detailed RFC limitations found by the administrative law judge follow from his findings at the PRTF stage. *See* Statement of Errors at 4. A "moderate" limitation in concentration, persistence, or pace can affect a claimant's ability to perform even simple, repetitive tasks over an eight-hour day. *See, e.g., Maldonado v. Astrue*, Civil No. 08-412-B-W, 2009 WL 1885057, at *6 (D. Me. June 30, 2009) (rec. dec., *aff'd* July 23, 2009).

*Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions.").

### B. Treatment of Dr. Barter

Post-hearing, the plaintiff submitted a mental RFC opinion of examining consultant Dr. Barter indicating that, in 13 of 25 areas of mental functioning, the plaintiff was unable to meet competitive standards, and in one area she had no useful ability to function at all. *See* Record at 719-20. She argues that the administrative law judge committed reversible error in rejecting that opinion by (i) failing to recognize that it was based on detailed psychometric testing and (ii) offering merely a vague and unsupported statement that it was "not consistent with the record as a whole[.]" Statement of Errors at 5-7.

As the plaintiff's counsel observed at oral argument, relevant regulations provide that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the commissioner] will give that opinion." 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(3). Yet, it is too great a stretch to reason, on the basis of the quoted regulations, that a failure to discuss the fact that an opinion is buttressed by testing is in itself reversible error, if good reason otherwise is supplied for rejecting that opinion.

Dr. Barter was an examining, rather than treating, source, and his opinion addressed RFC, an issue reserved to the commissioner with respect to which the opinions of even treating sources

are accorded no "special significance[.]" *Id.* §§ 404.1527(e)(2)-(3), 416.927(e)(2)-(3). As discussed below, the administrative law judge offered good reasons for rejecting the Barter opinion. Even as to a treating source, an administrative law judge need do no more. *See, e.g., id.* §§ 404.1527(d)(2), 416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service Rulings 1983-1991* (Supp. 2009) ( "SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

With respect to the reasons actually supplied for the discounting of the Barter opinion, the plaintiff narrowly reads the administrative law judge's assessment as confined to the following sentences: "The undersigned gives Dr. Barter's opinion little weight regarding his mental residual functional capacity for the claimant since it is not consistent with the record as a whole (Exhibit 27F). Various treatment records characterize the claimant as alert, oriented x3, denying hallucinations or suicidal or homicidal ideations (Exhibits 7F, 8F, 9F)." Record at 18.

In fact, the administrative law judge offered considerably more detailed support for his handling of the Barter opinion and the experts' opinions generally, noting, *inter alia*, that the plaintiff:

1. Never required psychiatric hospitalization, had engaged in individual therapy and taken some medication for depression and anxiety, but had not been consistent in taking her medication, and was not currently taking any medication. *See id.* at 18; *see also, e.g., id.* at 52-53 (plaintiff's hearing testimony that she was not currently using medication for depression but was waiting for an opening for medical management), 357 (July 26, 2007, notation by Cynthia Dechenes, M.D., that plaintiff had stopped her antidepressant, stating "I'm doing fine[,]"

7

although she went on to start yelling that she was not losing weight), 501 (August 1, 2007, Central Maine Medical Center note of psychiatric consultation stating that the plaintiff "denies ever having been psychiatrically hospitalized but does state that she has been given a diagnosis of depression and has been placed on medications in the past, including Zoloft, Lunesta, and trazodone. She states that she was not compliant with the Zoloft and stopped taking this medication weeks ago."), 551 (April 25, 2008, notation by Deborah Hirst, PMH-NP, during medical management consultation that the plaintiff was not taking Abilify every day, but rather probably three out of seven days).

    2.    Was able to take care of herself and her four-year-old son and maintain an apartment, despite this lack of treatment. *See id*. at 18; *see also, e.g., id*. at 45-46 (plaintiff's hearing testimony that she does everything necessary to maintain her own and her son's hygiene and cooks and cleans house), 551 (April 25, 2008, notation by Hirst that the plaintiff presented as "being a normal functioning single mother").

    3.    Was primarily focused on services other than mental health when she received counseling at Tri-County Mental Health Services, which was evident from her discharge for lack of participation in her treatment once she was provided with assistance in finding housing and filing for Social Security benefits. *See id*. at 18-19; *see also, e.g., id*. at 551 (April 25, 2008, notation by Hirst that "when she came here she was homeless and in crisis. Things have certainly settled down for her. She does have a place to live. Things are much more stable, and she feels that probably her stability is related to that even though she feels a bit restless about her situation."; discontinuing hydroxyzine because plaintiff had not taken it, and switching Abilify to an as-needed medication, "which may in fact merely be placebo effect"), 651-52 (June 30, 2008, discharge summary of social worker Spencer noting that the plaintiff had stopped coming to

scheduled appointments and returning phone calls; observing: "Over the course of treatment, [the plaintiff's] anxiety, depression and anger subsided except for the two months, during the holiday season, when she was homeless and living in a shelter.  Once she was able to move into her own apartment, and have her son live with her again, her mood and affect greatly improved.").

There was no error in the handling of the Barter opinion.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 18th day of May, 2010.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge